## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

PENNY LEE PHILLIPS,      )
              )
    Plaintiff,        )
              )
v.                  )
              )    **Case No. CIV-23-545-SM**
MARTIN O'MALLEY,      )
COMMISSIONER OF SOCIAL    )
SECURITY            )
ADMINISTRATION,[1]        )
              )
    Defendant.      )

## MEMORANDUM OPINION AND ORDER

Penny Lee Phillips (Plaintiff) seeks judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. § 405(g). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). *See* Docs. 10, 11.

Plaintiff argues that the Administrative Law Judge's (ALJ) residual functional capacity (RFC)[2] assessment lacked substantial supporting evidence,

---

[1]    Martin O'Malley became the Commissioner of Social Security on December 20, 2023, and is therefore substituted as Defendant in this suit. *See* Fed. R. Civ. P. 25(d).

[2]    Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

and the ALJ erred in his consideration of both her subjective complaints and her non-severe mental impairments. Doc. 15, at 13-23. After a careful review of the record (AR), the parties' briefs, and the relevant authority, the Court affirms the ALJ's decision. *See* 42 U.S.C. § 405(g).[3]

## I.    Administrative determination.

### A.    Disability standard.

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B.    Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work

---

[3]    Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C.   Relevant findings.

#### 1.   ALJ's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 14-25; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1)   had not engaged in substantial gainful activity since September 29, 2017, the alleged onset date;

(2)   had the severe medically determinable impairments of fibromyalgia, hypertension, obstructive sleep apnea, degenerative disc disease of the cervical spine, degenerative changes in the right shoulder, and bilateral carpal tunnel syndrome;

(3)   had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)   had the residual functional capacity to perform light work with the following limitations: she can (a) frequently climb, balance, stoop, kneel, crouch, and crawl; (b) frequently reach overhead; and (c) frequently handle and finger;

(5)     was able to perform her past relevant work as a retail store
        manager, DICOT 185.167-046, as it is actually and generally
        performed in the economy; and so,

(6)     had not been under a disability from September 29, 2017
        through November 28, 2022.

*See* AR 14-25.

### 2.     Appeals Council's findings.

The ALJ issued his decision after the Social Security Administration's

Appeals Council remanded the case for reevaluation of Plaintiff's medical

record to "include manipulative restrictions that would account for the nerve

conduction study findings, ulnar neuropathy, and mild wrist weakness." *Id.* at

12; *see id.* at 147-48. The ALJ also reconsidered Plaintiff's "maximum residual

functional capacity, past relevant work, and obtain[ed] vocational

supplemental expert testimony." *Id.* The Appeals Council denied Plaintiff's

request to review the ALJ's latest decision. *Id.* at 1-6. So the ALJ's decision is

the Commissioner's final decision for judicial review. *See* 20 C.F.R. § 404.981;

*see also Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011) ("The Appeals

Council denied review, making the ALJ's decision the Commissioner's final

decision for our review.").

## II.    Judicial review of the Commissioner's final decision.

The Court reviews the Commissioner's final decision to determine

"whether substantial evidence supports the factual findings and whether the

ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))). The Court "remain[s] mindful that '[e]vidence is not substantial if it is overwhelmed by other evidence in the record.'" *Wall*, 561 F.3d at 1052 (alteration in original) (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005)).

This Court "consider[s] whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th

Cir. 2014) (quoting *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (placing the burden to show harmful error on the party challenging an agency's determination).

## III.  Analysis.

### A.  Substantial evidence supports the ALJ's RFC assessment.

Plaintiff asserts the ALJ failed to acknowledge all of the evidence about her upper extremity impairments. Doc. 15, at 14. She contends the ALJ's assessment of frequent handling and fingering and overhead reaching did not appropriately incorporate her nerve conduction study, physical examination findings, and her subjective pain complaints about carpal tunnel syndrome and fibromyalgia. *Id.*

In crafting the RFC assessment, the ALJ considered Dr. Rita Hancock's November 2017 treatment notes. Those notes delineated Plaintiff's subjective complaints of numbness, headaches, tingling, pain, and burning sensation in the upper extremities while performing some activities and in the middle of the night. AR 20, 490. Dr. Hancock reported normal muscle testing in the upper extremity groups and that Plaintiff had decreased sensation at the tips of her digits. *Id.* at 491. She thought that manual manipulation might worsen

Plaintiff's pain. *Id.* Plaintiff reported that heat packs and medications helped to manage her symptoms. *Id.* at 490.

A follow-up nerve conduction study showed Plaintiff had median neuropathy at the bilateral wrists, mild to moderate on the right and moderate to severe on the left. *Id.* at 20, 493. Ulnar neuropathy was also present at the left elbow. *Id.* Dr. Hancock assessed Plaintiff with "[c]ompression neuropathies in the upper limbs" and discussed nerve decompression surgery to treat her carpal tunnel syndrome. *Id.* at 493.

Plaintiff presented similar complaints of weakness and numbness at a January 3, 2018 orthopedic clinic visit in preparation for carpal tunnel surgery. *Id.* at 20, 497. She had decreased sensation in the median nerve distribution of the right hand with some mild weakness in the [ulnar] muscular eminence. *Id.* at 497. She had a positive Tinel's at the wrist and positive Phalen's at about twenty seconds. *Id.* There was a positive carpal compression at about twenty-five seconds. *Id.* She had a good digital range of motion along with good finger flexion and extension. *Id.* Her profundus and superficialis tendons on the flexor side were functioning appropriately, as were her extensor tendons and EPL tendon. *Id.*

On her left side, Plaintiff had decreased sensation in the ulnar nerve distribution, a positive Tinel's at the elbow, weakness in the intrinsic muscles

with abduction and adduction of the fingers, and active flexion of the digits. *Id.* at 21, 497. The profundus and superficialis tendons as well as extensor tendons were functioning appropriately. *Id.* at 497. An Allen's test was normal. *Id.* Plaintiff had good radial and ulnar pulses and showed a full range of motion. *Id.* She had tenderness over the medial aspect of the left elbow and with motion over the cubital canal. *Id.* Plaintiff agreed to a carpal tunnel release, but insurance complications prevented the surgery. *Id.*; *see id.* at 504.

In a March 2018 visit with her family physician, Dr. Diana O'Connor, Plaintiff stated she was satisfied with her medication regime and was in no distress. *Id.* at 504-05. From May 2018 through April 2019, the ALJ observed that Plaintiff's treatment notes reflect "benign physical limitations." *Id.* at 21 (outlining May 3, 2018, January 24, 2019, January 30, 2019, February 6, 2019, April 24, 2019, April 29, 2019, treatment notes).

Dr. Raymond Azadgoli performed a consultative examination in March 2019. *Id.* at 21-22, 559-61. He noted that with "average encouragement," Plaintiff showed "fine tactile manipulation when not directly observed." *Id.* at 22; 560. Dr. Azadgoli assessed her with fibromyalgia, obesity, and cervicalgia. *Id.* at 22, 561. The ALJ determined Dr. Azadgoli's objective findings and observations were supportive of only "benign physical limitations." *Id.* at 22.

The ALJ concluded that Plaintiff's May 2019 through February 2021 treatment notes "did not document significant physical limitations." *Id.* The ALJ noted Plaintiff's reports of "better" overall functioning and physical abilities with medication. *Id.* He noted Plaintiff reported improvement in performing household chores while taking tramadol. *Id.* He noted Plaintiff's report of average pain of four on a scale of one to ten, with a report of five as the worst. *Id.*

The ALJ found the state medical consultants' opinions only partially persuasive as they did not include certain restrictions related to overhead reaching, handling, and fingering. *Id.* at 23. The ALJ attributed this to those examiners not adequately considering the nerve conduction study, physical exam findings, and subjective complaints of pain. But the ALJ did consider that information and imposed greater limitations than those recommended by the consultants. *Id.* In sum, the ALJ considered the evidence of limitations in Plaintiff's hand usage, and the extent of the relief she received with treatment, as evidenced by the objective medical record. The ALJ's consideration of the record was sufficient to support his RFC assessment.

**B.     The ALJ properly assessed Plaintiff's subjective statements.**

Plaintiff argues the ALJ erred in his analysis of her subjective statements. Doc. 15, at 17-21. In evaluating a claimant's symptoms, the ALJ

must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017). If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include: the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p, 2017 WL 5180304, at *7-10 (listing similar factors); 20 C.F.R. § 404.1529(c)(3).

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the

ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.*

The ALJ discounted Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms because they were "not entirely consistent with the medical evidence and other evidence in the record." AR 19. Turning to the objective medical evidence, the ALJ noted that no acceptable medical source corroborated Plaintiff's alleged standing, walking, lifting, and gripping limitations. Similarly, as to her alleged lifting, gripping, feeling, standing, walking, and sitting limitations, the physical exam findings and diagnostic testing did not support her subjective complaints. *Id.* (citing *id.* at Exhibits 3F, 4F, 6F, 8F, and 10F). As to the balance problems, gait instability, persistent dizziness, and episodic migraine headaches the claimant described at the hearing, the ALJ determined Plaintiff's treatment notes did not support these symptoms. *Id. a*t 19-20. He could not find support for her alleged need for a cane or wearing wrist braces, concluding there was no documented medical necessity for either. *Id.* at 20.

11

The ALJ observed the reported effectiveness of Plaintiff's medications, noting that at a March 2018 visit, Plaintiff reported "she was satisfied with her medication regime." *Id.* at 21. In January 2019, she stated that her medication was working well to manage her chronic pain and that she was generally doing well. *Id.* Her April 2019 visits similarly showed she was doing well. Plaintiff reported that her medication regimen improved her pain control, and she was generally doing well with no adverse effects. *Id.* The ALJ also noted Plaintiff did not require intense pain therapies, surgeries, or in-home support, bolstering his consistency conclusion. *Id.*

The ALJ also considered Plaintiff's daughter's third-party statement, in which she stated Plaintiff suffered from numbness and pain in her hands, back, neck, and face, that Plaintiff could not grip, lift, and hold onto things well, that she was limited in her ability to function because of daily pain, that the pain would not improve with medications, that she had limited vision because of blurry vision, and that she experienced adverse effects of medications (such as drowsiness) without much relief. *Id.* at 24. In finding this statement of limited probative value, the ALJ pointed to the "longitudinal record" of pain relief with medication and Plaintiff's reported daily activities, which included "doing laundry twice a week, taking a shower, getting dressed, watching television, and attending her grandson's ball games." *Id.* (citing *id.* at 8F, 3E). Although

12

the ALJ did not point to Plaintiff's daily activities in discounting her consistency, he considered them at step two, and he considered the "entire record." *Id.* at 16-17, 18; *see Mattocks v. Colvin*, No. CIV-15-276-M, 2016 WL 2600464, at *5 (W.D. Okla. Apr. 15, 2016) ("The ALJ stated that he considered the entire record when assessing Plaintiff's RFC and the practice in the Tenth Circuit is to take the ALJ at his word."), *adopted* 2016 WL 2343906 (W.D. Okla. May 3, 2016).

Substantial evidence supports the ALJ's analysis. *See Thomas v. Berryhill*, 685 F. App'x 659, 664 (10th Cir. 2017) (where ALJ evaluates a claimant's subjective complaints and explains the evidence he relies on, "[n]othing more is required" for a consistency analysis). As a result, the ALJ committed no error in his consistency analysis of Plaintiff's subjective complaints.

### C. The ALJ did not err in his consideration of Plaintiff's non-severe mental impairments and substantial evidence supports his conclusions.

Plaintiff argues the ALJ disregarded her depression and mild neurocognitive disorders in crafting the RFC assessment. She argues he omitted any limitations in finding she could perform her past relevant work with an SVP of 7. Doc. 15, at 22-23.

An ALJ must consider all medically determinable impairments, including impairments that are not severe, in assessing residual functional capacity. 20 C.F.R. § 404.1545(a)(2). The SSA requires this analysis because, even if a non-severe impairment standing alone "may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). So when an ALJ finds non-severe mental impairments at step two, the ALJ must still consider those mental impairments when assessing the RFC. *Id.*

The ALJ found Plaintiff's depression and mild neurocognitive disorders were non-severe impairments. AR 15. To reach this finding, the ALJ considered four broad functional areas of mental functioning found in the disability regulations used to evaluate mental disorders. 20 C.F.R. § 404.1520a(c)(3). If the ALJ finds a plaintiff's mental impairment results in no more than mild limitations in each of these areas, the ALJ generally concludes the impairment is not severe. *See id.* § 404.1520a(d)(1).

Here, the ALJ determined that Plaintiff had mild limitations in each of the four categories. AR 16-17. In so finding, the ALJ discussed Plaintiff's hearing testimony and her subjective reports to the SSA and her health care providers. He also considered Plaintiff's daily activities, which included

managing her personal care, preparing simple meals, performing some household chores, shopping in stores and by computer, attending her grandson's sports activities, dining out, and spending time with friends via social media. *Id.* He also reviewed the objective medical evidence. *Id.*

The ALJ noted that these limitations are not an RFC analysis but are used to rate the severity of mental impairments at steps two and three. *Id.* at 17. *See e.g.*, *Allison Rena S. v. Kijakazi*, 2023 WL 2374807, at *4 (D. Kan. Mar. 6, 2023) (rejecting plaintiff's argument that the ALJ's finding of "no more than minimal limitation in her ability to perform basic mental work activities" was "insufficient to explain how her mild impairments impacted her ability to return to past relevant semi-skilled work (internal quotation marks and alteration omitted)); *see also Higgins v. Saul*, 2021 WL 3076845, at *2 (D. Colo. July 21, 2021) (rejecting plaintiff's argument that "the ALJ should have more thoroughly considered these mild limitations in the RFC analysis" and upholding ALJ's finding that plaintiff could perform her prior semi-skilled work).[4]

---

[4]     SSR 96-8p, 1996 WL 374184, specifically cautions against any requirement that mental limitations found at step two equate to a corresponding RFC limitation. *Id.* at *4 ("The adjudicator must remember that the limitations identified in the [four functional areas] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."); *see also Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) ("[W]e conclude that the ALJ's finding of a

The ALJ also considered the entire record and considered Plaintiff's non-severe mental impairments at step four. AR 18, 23-24. The Court concludes the ALJ discussed and considered Plaintiff's non-severe mental impairments in determining the RFC and concluded Plaintiff had no functional limitations resulting from them. The ALJ did not have to impose any limitations in the RFC unless the record bore out those limitations. And Plaintiff does not suggest any limitations the ALJ should have included in the RFC assessment. *See, e.g.*, *McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) ("[W]e agree with the magistrate judge that, with regard to her hypertension, loss of vision or skin problems, the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC assessment or discuss any evidence that would support the inclusion of any limitations." (internal quotation marks and alterations omitted)); *Denman v. Saul*, No. CIV-18-640-G, 2019 WL 4059185, at *4 (W.D. Okla. Aug. 28, 2019) (affirming the ALJ's RFC where plaintiff "fail[ed] to

---

moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment in this case.").

identify the specific limitations he believes were . . . [erroneously] omitted from the RFC.").

The ALJ committed no error in his consideration of Plaintiff's non-severe mental impairments, and substantial evidence supports his conclusions.

## IV.   Conclusion.

For the above reasons, the Court affirms the Commissioner's final decision.

**ENTERED** this 24th day of January, 2024.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE